UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEPHEN CROW,<br><br>    Plaintiff,<br><br> v.<br><br>SEABORNE FREIGHT & LOGISTICS INC.; *et al.*,<br><br>    Defendants. | Case No. 2:25-cv-00135-ART-NJK<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT AND OTHER PENDING MOTIONS<br><br>(ECF Nos. 6, 9, 11, 20) |

Plaintiff Stephen Crow moves for default judgment against Defendant Seaborne Freight & Logistics, Inc. (ECF No. 20.) The Court grants Crow's motion and dismisses his other pending *ex parte* motions for claim and delivery and preliminary injunctive relief as moot. (ECF Nos. 6, 9, 11.)

## I. Background

Plaintiff Stephen Crow paid over $3 million for a box of diamonds and gold from Judy Carl, a person with whom he communicated on social media applications in 2023 and 2024 and may have met at a manufacturer's wholesale meeting in 2014. (ECF No. 18 at 4; *see* ECF No. 18-6.) Carl allegedly shipped the box of gold and diamonds via Defendant Seaborne Freight, but Crow never received it. (ECF No. 18 at 5.)

Crow sued Carl, Seaborne, and other companies and individuals allegedly involved with procuring the box under the federal RICO and several state statutes. (*See* ECF No. 1.) The Clerk entered default against Seaborne after it failed to make an appearance upon being served. (ECF No. 16.) Seaborne has still not entered an appearance. (*See* ECF No. 18.)

## II. Legal Standard for Default Judgment

After the Clerk has entered default against a party, an opposing party may

seek default judgment. Fed. R. Civ. P. 55(b). In deciding whether to grant default judgment, the Court considers factors including "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)).

### III. Analysis

The Clerk has already entered default against Seaborne (ECF No. 17). Accordingly, the Court considers Crow's motion for default judgment.

#### A. Prejudice to Plaintiff

The possibility of prejudice to the plaintiff may be satisfied by showing that a plaintiff lacks recourse without default judgment. *Nolan v. Calello*, No. 2:21-CV-00981-AB-RAO, 2021 WL 4621945, at *3 (C.D. Cal. July 8, 2021); *BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*, No. 2:22-CV-01648-GMN-BNW, 2024 WL 1160715, at *3 (D. Nev. Mar. 15, 2024). In this case, Crow has lost a significant amount of money due to Seaborne's alleged fraud, and Seaborne has failed to respond or appear in the suit. (ECF No. 17.) This shows prejudice.

#### B. Merits of Plaintiff's Claims and Sufficiency of Complaint

Crow's complaint must allege facts that support plausible, legally cognizable claims. *NewGen*, 840 F.3d at 613–14. Crow seeks relief for his fraud, claim and delivery, and RICO claims.

##### 1. Fraud

To allege fraud, Federal Rule of Civil Procedure 9(b) requires a party to state "with particularity" the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the complaint must include "an account of the time,

place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Cuadros v. State Farm Fire and Cas. Co.*, No. 2:16-CV-2025-JCM-VCF, 2017 WL 2683681, at *4 (D. Nev. June 20, 2017) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). The plaintiff must allege the following elements with particularity: "(1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) that defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation." *Greenstein v. Wells Fargo Bank, N.A.*, 2:14-CV-01457-APG-CWH, 2017 WL 1173916, at *4 (D. Nev. 2017) (quoting *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998)).

Here, Crow has alleged fraud with particularity. Judy Carl told Crow on or about January 9, 2024, that she was inheriting diamonds, gold, and farmland. (ECF No. 1-3 at 2.) She represented that she was shipping the diamonds and gold with an agent named Jerome Bradley via Seaborne Freight & Logistics, and Seaborne sent Crow a tracking number. (*Id.*) Judy Carl represented that she was the owner of the box. (*Id.*) On or about November 5, 2024, Seaborne told Crow that the tracking number had changed. (*Id.*) Seaborne's agent, Michael Ali, represented to Crow that the box and its contents would arrive at Harry Reid International Airport in Las Vegas on January 21, 2025. (*Id.*) This, Crow alleges, turned out to be false: the box was never delivered. (ECF No. 1 at 4-6, 11.) Each time the box was allegedly going to be delivered, Seaborne canceled the delivery, and Seaborne and other Defendants told Crow that he needed to pay more. (*Id.* at 11.) Crow alleges that Seaborne knew these misrepresentations to be false because no one ever never sent him the box, and Seaborne and other Defendants stopped responding to requests to deliver the box. (*Id.*) Crow alleges that Seaborne intended to induce Crow to pay $3 million in wire transfers for the box. (*Id.* at

3

11.) Crow has alleged $3 million in damages arising out of his reliance on Seaborne's misrepresentations that they would send the box. (*Id.*) Crow's fraud claim is alleged sufficiently.

### 2. Claim and Delivery

Claim and delivery is "an action for the repossession of personal property wrongfully taken or detained by the defendant." *Cannabis Sci., Inc. v. Mohammad Isam Afaneh*, 2:13-cv-00114-GMN-CWH, 2013 U.S. Dist. LEXIS 9661*, at *8 (D. Nev. Jan. 13, 2013); NRS 17.120; *see also Ovation Fin. Holdings, LLC v. Reborn Skin Care LLC*, A-21-828711-C, 2022 Nev. Dist. LEXIS 124*, at *4, *6 (8th Dist. Ct. Nev. Jan. 24, 2022) (ordering delivery of equipment following default judgment on claim-and-delivery claim).

Here, Crow has sufficiently alleged that Defendant wrongfully detained the box that Crow owned. (ECF No. 1 at 11.) Plaintiff's allegation of claim and delivery is sufficient.

### 3. RICO Claim for Wire Fraud

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters and Joiners of Am. v. Bldg. and Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. at § 1961(4); *see also Boyle v. U.S.*, 56 U.S. 938, 944 (2009) ("the RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes"). A pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years… after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(4). Racketeering activity includes

"any act which is indictable under… § 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1).

While Crow alleges facts showing conduct and an enterprise, (*see* ECF No. 1 at 2-3, 11), he does not allege plausible facts suggesting two acts of racketeering.

The first instance of alleged conduct, wire fraud, is plausible because Crow alleges sufficient facts to support it in his declaration (ECF No. 1-3) and several exhibits (ECF Nos. 1-4, 1-5, 1-6, 1-7, 1-13, 1-14, and 1-15.). (ECF No. 1 at 12.) Seaborne and Judy Carl represented that Crow would receive the box, but every time the box was supposedly in route, Seaborne and others would tell Crow that additional fees and costs were needed before it could be delivered. (*Id.* at 10-12); *see supra* III.B.1. Ultimately the box never was delivered. (ECF No. 1 at 12.)

The second alleged racketeering act fails to meet pleading standards. Crow alleges that this conduct "involved the creation and use of fraudulently recorded instruments (including the recording of same) for misrepresenting the truth in order to obtain loan funds from financial institutions." (*Id.* at 12.) Unlike the other allegations in this complaint, no facts in the complaint support this allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement"). No exhibits or other allegations show how Defendant fraudulently obtained loans from financial institutions. (*See* ECF No. 1.) This allegation cannot serve as the basis to prove a pattern of racketeering activity. *See* 18 U.S.C. § 1961(4).

Accordingly, these *Eitel* factors favor granting default judgment on the fraud claim and the claim-and-delivery claim, but not on the RICO claim.

**C. Damages at Stake in Relation to Seriousness**

The damages at stake in the case are proportional to the seriousness of Seaborne's conduct. The amount that Seaborne allegedly defrauded Crow is proportionate to Seaborne's conduct. *See, e.g., Perciballi v. Henry N.*, No. SACV

08-01168 JVS, 2017 WL 6184001, at *4 (C.D. Cal. 2017) (holding the amount the Seabornes defrauded the plaintiffs is proportional to the harm caused). As discussed above, Crow successfully states a claim for fraud against Seaborne, and the Court finds Crow's allegation of damages appropriate.

### D. Disputes of Material Facts

There is no dispute concerning material facts at this stage in proceedings. *NewGen*, 840 F.3d at 616. After the Clerk has entered default, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987)).

Accordingly, this factor also weighs in favor of default judgment.

### E. Excusable Neglect

Seaborne's neglect of this lawsuit is not excusable. When a defendant fails to make an appearance after being properly served, this factor favors default judgment. *See Bd. of Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Bottom Line Constr.*, No. 2:23-CV-00830-JCM-DJA, 2024 WL 3104519, at *3 (D. Nev. June 24, 2024). Seaborne was served with the summons and complaint. (*See* ECF No. 13.) It did not respond. Accordingly, this factor weighs in favor of default judgment.

### F. Policy Favoring Decision on the Merits

Here a decision on the merits is unlikely despite the federal rules' strong policy preference for deciding cases "upon their merits whenever possible." *Newgen*, 840 F.3d at 616 (citing *Eitel*, 782 F.2d at 1471–72). As Seaborne has not participated in this case at all over its entire duration, the Court finds that deciding the case on the merits is unlikely. *See PepsiCo*, 238 F. Supp. 2d at 1175. This factor does not preclude the Court from granting default judgment.

Accordingly, the Court finds that the factors weigh in favor of granting

6

default judgment.

**G. Damages**

Crow has provided evidence of his damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (allegations of damages not taken as true when considering default). In the motion for default judgment, Crow requests compensatory damages of $3,630,070.40 "as evidenced by wire transfer records." (ECF No. 20 at 10.) In Crow's Declaration (ECF No. 1-3), he alleges over $3,000,000 in fraud damages. (*See* ECF No. 1-3 at ¶ 20.) ("I sent wire transfers that totaled over $3 Million concerning the acquisition of the subject box and its contents"). The wire transfer records Crow attached to his complaint total to $2,278,011.40 (ECF No. 1-7) and the exhibits attached to the motion for default judgment (ECF No. 18) add another $783,770, for a total of $3,061,781.40:

- 8/2/24 transfer: $150,000 (ECF No. 1-7 at 2.)
- 8/7/24 transfer: $250,000 (*Id.* at 7.)
- 8/12/24 transfer: $150,000 (*Id.* at 12.)
- 7/22/24 transfer: $105,000 (*Id.* at 17.)
- 7/29/24 transfer: $167,500 (*Id.* at 23.)
- 8/16/24 transfer: $250,035 (*Id.* at 28.)
- 7/10/24 transfer: $69,600 (*Id.* at 32.)
- 7/3/24 transfer: $196,000 (*Id.* at 38.)
- 7/17/24 transfer: $225,600 (*Id.* at 44.)
- 2/17/24 transfer: $92,500 (*Id.* at 52.)
- 2/15/24 transfer: $1,500 (*Id.* at 58.)
- 3/11/24 transfer: $31,780 (*Id.* at 64.)
- 3/7/24 transfer: $33,000 (*Id.* at 65.)
- 3/18/24 transfer: $153,000 (*Id.* at 71.)
- 3/12/24 transfer: $54,200 (*Id.* at 76.)
- 2/28/24 transfer: $64,780 (*Id.* at 84.)

- 6/17/24 transfer: $100,000 (*Id.* at 90.)
- 6/25/24 transfer: $116,000 (*Id.* at 95.)
- 2/23/24 transfer: $40,950.40 (*Id.* at 101.)
- 4/16/24 ATM deposit: $26,566. (*Id.* at 102.)
- 8/21/24 transfer: $125,035 (ECF No. 18-15 at 2.)
- 1/24/24 transfer: $37,000 (*Id.* at 3.)
- 11/24/24 transfer: $50,000 (*Id.* at 6-7.)
- 12/17/24 transfer: $80,000 (*Id.* at 8-9.)
- 11/27/24 transfer: $73,700 (*Id.* at 10-11.)
- 11/4/24 transfer: $78,000 (*Id.* at 12.)
- 9/27/24 transfer: $190,000 (*Id.* at 13-14.)
- 9/6/24 transfer: $150,035 (*Id.* at 15-16.)

Based on the wire transfer records, it is unclear what the basis is for the extra compensatory damages, totaling around $600,000. (*See* ECF No. 1-7, ECF No. 18-15.)

Regarding the box, since Plaintiff requests a writ of possession and not the value of the box itself, there is no need to evaluate Plaintiff's appraisal of the box's value. (*See* ECF No. 20 at 10.)

The Court must also consider Plaintiff's claim for attorney's fees. "Under both federal and Nevada law, valid contractual provisions for the payment of attorneys' fees constitute a sufficient source of authority supporting a fee award." *Hunt v. Zuffa, LLC*, 528 F. Supp. 3d 1180, 1183 (D. Nev. 2021). A motion for attorney's fees must include a reasonable itemization and description of the work performed, and an itemization of all costs sought to be charged as part of the fee award. LR 54-14. The motion should also include a brief summary of the results obtained; the time and labor required; the novelty and difficulty of questions; skill required to perform the services properly; the preclusion of other employment by the attorneys due to acceptance of the case; the customary fee; whether the fee

is fixed or contingent; the time limitations imposed by the client or circumstances; the experience, reputation, and ability of the attorneys; the undesirability of the case, the nature and length of the professional relationship with the client; awards in similar cases; and any other information the court may request. *Id.*; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Plaintiff has not provided briefing or evidence to justify an award of attorney's fees, and the Court accordingly does not grant his request.

The Court permits Plaintiff to submit a motion to alter judgment under Federal Rule of Civil Procedure Rule 59 or 60 for the limited purpose of explaining the legal and factual basis for the other $600,000 in compensatory damages and attorney's fees.

**IV.    Writ of Possession**

"Every remedy is available that, under the law of the state where the court is located, provides for seizing … property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Nevada provides for the seizing of property through a writ of possession. NRS 31.840; *see also Spectrum Leasing USA, Inc. v. Elite Extraction Services Corp.*, 2:22-cv-00400, 2022 WL 1316362, at *1-*2 (D. Nev. May 2, 2022) (ordering a show cause hearing on writ of possession).

The Court allows Plaintiff to file an affidavit showing: (1) "that the plaintiff is the owner of the property claimed (particularly describing it), or is lawfully entitled to the possession thereof"; (2) "that the property is wrongfully detained by the defendant"; (3) the alleged cause of the detention thereof according to the plaintiff's best knowledge, information and belief"; (4) "that the same has not been taken for a tax, assessment or fine pursuant to a statute, or seized under an execution or an attachment against the property of the plaintiff, or, if so seized, that it is by state exempt from such seizure"; (5) "the actual value of the property." NRS 31.850.

Although Plaintiff attached this information in Crow's declaration (ECF No. 1-3), NRS 31.850 requires this information to be in an affidavit.

If the affidavit shows these five elements, the Court, under NRS 31.853, would issue an order directed to Defendant to show cause why the property should not be taken from Defendant and delivered to Plaintiff and set a hearing. NRS 31.853.

### V.     Conclusion

The Court grants Crow's motion for default judgment against Defendant Seaborne Logistics (ECF No. 20) on Crow's fraud and claim and delivery claims, but not on Crow's RICO claim. The Court finds Crow's damages under these claims to be $3,061,781.40.

Plaintiff may submit an affidavit under NRS 31.850 regarding the requested writ of possession, as well as briefing for additional compensatory damages and attorney's fees.

The Court dismisses Crow's other pending *ex parte* motions for claim and delivery and preliminary injunctive relief as moot. (ECF Nos. 6, 9, 11.)

Dated this 11th day of July, 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE